THOMAS & JAMES HUNTER *vs*. BRYSON, *Adm'r c. t. a.* of JOHN MACARTNEY, JR.—*December*, 1833.

Where a testator in *Ireland*, appointed executors there, and declared that certain persons should be trustees of his property in *America*, with power and direction to collect and remit the same to his executors in *Ireland*, such persons are to be considered, not as trustees, but as limited executors, and bound to execute the trust in the mode prescribed by the will under which the authority was derived.

A testator may appoint different executors in different countries in which his effects may lie, or different executors, as to different parts of his estate in the same country.

A testator cannot appoint a trustee of his personal property by his last will, so as to evade the provisions of the testamentary system. Such a trustee cannot act in the first instance without taking out letters testamentary or of administration, and having taken out letters of administration, if the duties imposed upon him by the will, as trustee, are the same which as administrator he is bound by law to perform, he cannot discharge himself as administrator by a payment to himself as trustee.

APPEAL from the Orphans Court of *Baltimore* county.

In this case a petition was filed by the appellant, *Thomas Hunter*, against the appellee, on the 1st of June, 1832, stating that by the last will of *John Macartney, Jr., Hugh Thompson, Nathan G. Bryson*, the appellee, and *Thos. Humes*, of *Baltimore*, were appointed trustees of all his property in *America*. That *Thompson* and *Humes* refused to act, and that letters of administration, *c. t. a.* on the estate of the testator, were granted *Bryson* by this court, in which character he had received a large sum of money, for which he has not accounted. That by the will of the testator, the moneys so received and retained by *Bryson*, are payable to

the petitioner, and a certain *Andrew Patrick,* now deceas-ed, and he prays that the appellee may be decreed to pass an account, and pay the balance in his hands over to the said petitioner.

By the will of *Macartney,* a copy of which was exhibit-ed with the petition, the petitioner and *Andrew Patrick,* of *Ireland,* are appointed trustees and executors ; and after di-recting the payment of a number of legacies in *Ireland* and *America,* and among others, one of £100 to the petitioner, *James Hunter,* "now gone to *America,*" the will proceeds, "and as all the property that I have now willed, is in our firm in *Baltimore* in *America,* known by the name or firm of *Macartney & Sanders,* I therefore nominate and appoint *Hugh Thompson,* merchant, *Nathan G. Bryson,* and *Tho-mas Humes,* all of *Baltimore,* in *America,* trustees of all my property in *America,* and it is my will, that these trus-tees that I have nominated and appointed, to do all my said *American* affairs, shall have full power to act for me, and to settle all my accounts in the way they shall think best ; and so soon as they conveniently can, they shall remit said pro-perty to my trustees and executors, that I have hereby nominated and appointed in *Ireland.*"

The answer of *Bryson,* the appellee, denies the right of the petitioner to call him to an an account, or to enforce the payment by him of any balance in his hands, as the ad-ministrator of *Macartney.*

Afterwards the parties filed the following agreement :

"It is agreed that the petition heretofore filed by *Thomas Hunter,* shall be considered as amended by adding *James Hunter* thereto, as a co-petitioner, for the distribution of the deceased *Macartney's* effects, according to the just con-struction of his will. That *Thompson* and *Humes* renounc-ed all rights under the said will, when the said *Bryson* was appointed administrator. That *Bryson* has passed two accounts, the first in 1827. By the last of which there re-mained in his hands a balance of $1350 98, due the estate. That *Andrew Patrick* named in the will of *Macartney,* died

before the petition was filed in this cause, and after *Macartney's* death; and that the said *Thomas Hunter*, when the said petition was filed, and now, resides in the State of *Vermont*, and that *James Hunter*, the legatee, resides in *Baltimore*. It is also agreed, that the answer of *Bryson* shall be considered as so amended, as to ask of this court to allow him to pay over to himself as trustee, the balance in his hands as administrator, in the same way as if he had filed a petition asking for permission to do so."

The orphans court decreed, that *Bryson* settle another account, in which he is to receive credit for the balance due on his last account, *as paid over to himself as trustee,* under the will of the deceased, for the purposes therein mentioned. From this decree, the petitioners appealed to this court.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Gill,* for the appellant, contended,

1. That the power conferred upon the *American* trustees under the will, was a mere agency to collect the deceased's funds, which is void, being in opposition to the design and spirit to of our testamentary laws.

2. That the authority given to the *American* trustees, was a naked power, given collectively to the three persons named, and that when two of them renounced, the third could not act. Every authority of this description is to be strictly pursued, and when communicated to two jointly, ceases with the death of one. 1 *Liv. on Agency,* 79. 2 *Kent's Com.* 495. *Bergen vs. Duff,* 4 *Johns. Ch. Rep.* 368. *Patterson vs. Leavitt,* 4 *Conn. Rep.* 52, 52.

3. That *Bryson* having received the estate as administrator, must account to the persons beneficially interested, in that character. To the *American* legatees directly; to those in *Ireland* through the petitioner, *Thomas Hunter,* who represents them.

4. That *Bryson* having omitted, from 1827 to 1832, to remit these funds, has evinced such a gross neglect of duty as to have forfeited all rights as trustee, even if he had any, and ought not to be permitted now to delay the final settlement of the estate.

To show how the distribution should be made, he referred to *Dawes vs. Head*, 3 *Pick. Rep.* 128. *Ib.* 144. *Harvey vs. Richards*, 1 *Mason*, 411 to 415. 2 *Kent's Com.* 344 to 347. Act of 1798, *sub-ch.* 15, *sec.* 12. *De Sobry vs. De Laistre*, 2 *Harr. and Johns.* 224.

*Mayer* for the appellees.

This is principally a question of jurisdiction. The will creates a trust which the orphans court is not competent to enforce. The *Irish* executors are merely executors; but the parties in *Baltimore* are expressly constituted trustees. The authority and duties of the former are entirely local, and the court of chancery only, could compel them to remit money to a foreign country; whilst by the express terms of the trust, the latter are required to do. An administrator cannot be made to remit money abroad. 1798, *sub-ch.* 10, *sec.* 6, 10.

The subject of remitting money abroad depends upon judicial discretion, and the power cannot be exercised by the orphans court, whose jurisdiction is limited and defined by law. Even if *Bryson* had been named executor in the will, and such powers as were conferred on the trustees in this country had been superadded, they would have made him a trustee, and amenable only to the court of chancery. It would not have been within the jurisdiction of the orphans court, to take cognizance of the performance of such powers. *Jeremy's Eq.* 138. *Scurfield vs. Howes*, 3 *Bro. Ch. C.* 91. *Southouse vs. Bate*, 2 *Ves. and Bea.* 396. *Osgood vs. Franklin*, 2 *Johns. Ch. Rep.* 21. *Davour vs. Fanning, Ib.* 252. There is a great difference between a mere naked power, and a power coupled with a trust. The *Irish* executors could not as such recover money from

the *American* administrator. The trust survived to *Bryson*, though a mere naked power might not. *Osgood vs. Franklin,* 2 *Johns. Ch. Rep.* 21. *Davour vs. Fanning, Ib.* 252. And when the trustees disclaimed, the trust devolved on *Bryson* alone. *Adams vs. Taunton,* 5 *Mad. Rep.* 435. It is impossible to suppose, that the testator designed that all the parties should act collectively, or not at all; as in that event his object would be defeated by the refusal to act, or the death of one, or more of them, an event by no means improbable.

But suppose the trust was in fact defeated by the renunciation of two of the trustees; still as one had been created, the court of chancery alone could appoint another to execute it; or the legatees might at once file their bills for their legacies. *Ellison vs. Ellison,* 6 *Ves.* 662. *Brown vs. Higgs,* 8 *Ves.* 570.

The foreign executors had no right to recover the money from the domestic administrators. *Dawes vs. Head,* 3 *Pick.* 128. *Harvey vs. Richards,* 1 *Mason,* 413. *Ib.* 423. *Kraft vs. Wickey,* 4 *Gill and Johns.* 332. *Morrell vs. Dickey,* 1 *Johns. Ch. Rep.* 156. *Smith vs. Union Bank of Georgetown,* 5 *Peters,* 518. *Guier vs. O'Daniel,* 1 *Binney,* 349. 2 *Mass. Rep.* 384. *Harvey vs. Richards,* 1 *Mason,* 415. And there is difference between what are called ancillary and principal administrators. *Bryan vs. McGee,* 2 *Wash. C. C. R.* 337.

If the persons named in *Ireland* are to be considered in the character of trustees as well as executors, still they could only fill those characters in *Ireland.* Their remaining there was a condition annexed to the trust, and one being dead, and the other having moved to this country, their authority has ceased. *Coke Lit.* 27. 1 *Cruise's Dig.* 79. 1 *Roper on Leg.* 521, 522. *Ib.* 506. The court will look through the will, and if from its whole terms, they think that the trust was imposed because the parties resided in *Ireland,* they will imply such a condition, and upon their ceasing to reside there, the authority will be revoked.

Joining one of the legatees in the present petition makes no difference, because if the executor is entitled to receive the money from the defendant, the legatee is not; and in fact he is to be considered as uniting in the prayer of the petition, that the money may be paid the executor.

Dorsey, J., delivered the opinion of the court.

In decreeing that *Nathan G. Bryson* had a right to pay over all the funds in his hands as administrator with the will annexed, to himself as trustee, under the will of the deceased, and that he pass an account accordingly, we think the orphans court were in error. As to all his property and affairs in *America,* the testator, in most explicit terms, gave to *Hugh Thompson, Nathan G. Bryson,* and *Thomas Humes,* the same powers, and imposed on them the same duties, as if by his will he had, in so many words, appointed them his executors. This provision of the will, *per se,* created them limited executors, and two of them having declined the appointment, and the third accepted it, he is bound to execute the trust, in the mode prescribed by the instrument under which he derives his authority.

A testator may appoint different executors, in different countries, in which his effects may lie; or different executors, as to different parts of his estate in the same country. Whether letters testamentary, or of *administration cum testamento annexo,* have been granted in this case, is a matter wholly immaterial, so far as respects the present controversy. The directions of the will must be complied with; and *Nathan G. Bryson,* in his representative character, should be decreed to transmit or pay the funds in his hands to the executor in *Ireland;* or show some satisfactory reason for his being excused from so doing.

But suppose *Bryson* not to be created executor by the clause in the will, which has been referred to, and that the testator's design was, that the persons appointed should act literally as trustees, without taking out any letters testamentary, or of administration. The appointment is a nullity,

as far as the personal estate is concerned, being an attempt to evade the provisions of our testamentary system, in a way which the law does not tolerate.

The administrator in relation to the personalty, is *ex officio*, bound to the execution of every duty, with which it was illegally attempted to clothe the trustees. And the effort to transfer the funds in the manner proposed by the decree, from the hands of *Nathan G. Bryson*, as administrator, to those of *Nathan G. Bryson*, as trustee, is giving a construction to the act of the testator, to which no principle of judicial interpretation will lend even a momentary sanction.

The legatee, *James Hunter*, has assigned no sufficient reasons for his coming into the orphans court, and demanding of *Bryson* the payment of his legacy. If any special circumstances exist, warranting the interposition of a court of chancery in his behalf, he had better apply to that tribunal for relief.

The decree of the orphans court is reversed, and the record remanded, that such proceedings may be had therein, as the nature of the case may require.

DECREE REVERSED.